### W. L. Stephens v. W. H. Porter.

Decided June 21, 1902.

1.—School Land Purchase—Filing on Sunday.

An application to purchase State school land is not void because filed in the General Land Office on Sunday, since the law does not impose on the heads of the State departments any restrictions as to performing official acts on Sunday, and such filing is not "labor on Sunday" such as is prohibited by the penal statutes.

2.—Same—Charge.

Where in an action to recover State school land plaintiff claimed under an application to purchase indorsed as filed in the General Land Office on September 5th, which was Sunday, and there was evidence that the date was a mistake, and defendant's application was filed on September 7th, an instruction that plaintiff was entitled to recover if his application was filed on any other day than Sunday, about the time he made it, was error in denying a recovery if the application was filed on Sunday, and also in permitting a recovery although it was filed after defendant's application.

**3.—Same—Evidence Raising Issue—Charge.**

The court properly refused to charge that the uncontroverted evidence showed that an application to purchase was filed in the General Land Office on Sunday where, although it was indorsed as filed on that day, the chief clerk testified that it could not have been filed then, because the office was always closed on Sunday.

Appeal from Hall.　Tried below before Hon G. A. Brown.

*J. K. Duke* and *H. E. Deaver,* for appellant.

*W. M. Pardue,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit of trespass to try title was brought by appellee on the 25th day of November, 1899, to recover section 58, block 18, public school land in Hall County. The appellant pleaded not guilty. The case was tried by a jury, who found a verdict for appellee upon which judgment was rendered, and therefrom this appeal was taken.

The facts are substantially as follows: On September 3, 1897, Porter was an actual settler on the section involved and was in every respect eligible to purchase it from the State. It was on the market as dry grazing land at $1 per acre. On the date aforesaid he made out and swore to his application to purchase same and sent it by mail to the Commissioner of the General Land Office, at Austin. On the back of it is found this indorsement: "Received in General Land Office Sept. 5, 1897. Andrew J. Baker, Commissioner." The obligations filed with and cash payment made to the Treasurer as required by law. His application was rejected by the Commissioner, for what reason does not appear. He has continued to occupy said section as his home ever since his settlement thereon, and has every year regularly tendered the payments of interest and principal required by law, which have been as regularly declined and returned by the Treasurer. He also tendered the Commissioner his proofs of three years occupancy of said section, which were also rejected.

The evidence tended to prove that the application of Porter was received and filed in the General Land Office on September 5, 1897, as the Commissioner's indorsement thereon showed, which was Sunday. J. J. Terrell, chief clerk of the Land Office, however, testified that "the application could not have been received in the General Land Office of Texas on Sunday, for the Land Office is closed on that day and is always closed on Sunday;" that about that time they were very much rushed with land sales and had to employ extra and inexperienced clerks, who often made mistakes, and from this he concluded that the indorsement made thereon by the Commissioner that it was "Received in the General Land Office on Sept. 5, 1897," was a mistake. The 6th of September, 1897, was a legal holiday.

On the original application of Porter what seems to be a pen erasure is found both before the "3" in the date of the application and the "3"

in the date of the jurat, and also before the "5" in the date of filing, but the record does not disclose what was erased, if anything.

Stephens owned section 6, block 20, public school land, and was an actual settler thereon and had been for more than three years prior to September 4, 1897, and on that day made out and swore to his application to purchase said section 58, and also sections 28 and 32, and set this joint application by mail to the Commissioner of the General Land Office, at Austin, who received and filed the same September 7, 1897, and at the same time sent his obligation and cash payment to the Treasurer,— all of which were rejected, but for what reason the record fails to disclose. Afterwards during the same month he made separate applications, obligations, and cash payments for each section, and on October 21, 1897, the Commissioner awarded him section 58 upon his original application, dated September 4, 1897, and on the same day awarded him sections 28 and 32 on his subsequent separate applications, which last named two sections he accepted and sold before this suit was filed. He has made all payments required by law on section 58, and his account is in good standing in the Land Office and treasury as to said section.

It appears that after Stephens acquired his home section, and before his application of September 7, 1897, he applied for another section (48), which was awarded to him, and he sold it to one Daniel, who had settled on it and kept up his payments, making four additional sections to the home section of Stephens, and the court charged the jury that he was entitled to but three, and that as he had also purchased sections 28 and 32, and sold them, he was precluded from purchasing section 58, and that they could not find for him. To this charge the appellant Stephens assigns error. This assignment seeks to raise a serious question, as it seems the law contemplates that a settler is entitled to purchase but three additional sections to his home section. Hazlewood v. Rogan, 67 S. W. Rep., 82. We do not find it necessary, however, to decide it in this case. The jury were instructed that though defendant Stephens had no title to the section yet they could not find for plaintiff Porter on that ground, but must find for him, if at all, upon the strength of his own title. The jury were also charged that an application to purchase land filed on Sunday would be void and no rights would result therefrom to the appellant, and unless the plaintiff had shown that section 58 had been appraised by the Commissioner at $1 per acre, and the county clerk notified thereof before the plaintiff's application was filed in the Land Office, and had shown that his application was not filed on Sunday, then to find that he take nothing by his suit. But if they found that the land had been appraised at $1 by the Commissioner and the county clerk so notified in writing prior to the time of plaintiff's application, and if the application was not filed on Sunday, but about the time or soon after he made it, then to find for him, as the uncontroverted evidence proved that the law governing his application had otherwise been complied with.

We think the learned judge erred in charging the jury that if the application of Porter was filed in the General Land Office on Sunday it

would be void, and that he would acquire thereby no right to the land applied for therein. There is no law in Texas prohibiting the Commissioner of the General Land from holding his office open on Sunday, or any legal holiday, or from performing official acts on those days. Neither our Constitution nor our civil statutes lay any such restrictions upon the Governor nor upon any of the heads of the State departments, probably because it might sometimes be necessary for them to perform their official functions on those days. Our criminal statute provides that any person who shall "labor on Sunday" shall be fined, etc. Labor is defined as follows: "To exert muscular strength; to exert one's strength with painful effort, particularly in servile occupations; to work; to toil." Webster's Int. Dic., 821. The terms as used in the criminal statutes does not apply to an officer engaged in the performance of his official duties. The common law did not prohibit officers from doing ministerial acts on Sunday nor on holidays. It declared that Sunday was dies non juridicus,—not a judicial or court day,—but our statute has modified the common law by simply declaring that "no civil suit shall be commenced, nor shall any civil process be issued or served on Sunday, or any legal holiday, except in cases of injunction, attachment, or sequestration." This exception operates as a modification of that law, according to a well known rule of construction. Under this statute it has been held that a sale under execution and sheriff's deed made on a legal holiday was valid. Crabtree v. Whitesell, 65 Texas, 11. See also Railway v. Harding, 63 Texas, 162, where it was held proper and valid for a district court to try a cause on a legal holiday.

In Insurance Company v. Shrader, 89 Texas, 35, it was held by our Supreme Court that an application for writ of error received by the clerk of this court on Sunday and so indorsed, but not filed until Monday, must be considered as filed on Sunday and valid. The reasoning of our Supreme Court in the three cases cited leaves no doubt in our minds that the application of Porter to purchase section 58 in this case was not void by reason of its being received and filed in the General Land Office on Sunday, but was as valid in all respects as if received and filed on any other day in the week.

The court further instructed the jury that if Porter's application and obligation were "filed in the General Land Office on any other day than Sunday, about the time or soon after he made them," then they should find for him, as the uncontroverted evidence showed that the law had otherwise been fully complied with. This charge was erroneous in two respects,—first, in denying Porter the right to recover unless his application was filed on some day other than Sunday; and second, it was too indefinite as to the day of filing which would authorize him to recover the land from Stephens. "About the time or soon after he made them" (the application and obligation), might mean within one or two days, or within three or four or a dozen days, which, of course, would be after Stephens' application was filed.

It is insisted by appellant's counsel that the evidence shows that Porter's application was filed on Sunday, and that there is no evidence that it was filed on any other day. His third assignment is as follows: "The verdict of the jury is not supported by the evidence in this, that the evidence shows that plaintiff's application to purchase section 58 was filed in the Land Office on September 5, 1897, which, it is undisputed, was Sunday. No other testimony was before the jury as to its having been filed on any other day or at any time."

His fourth assignment of error complains of the court's refusal to give a special charge asked, which is as follows: "You are charged that the uncontroverted evidence shows that the plaintiff filed his application to purchase the land in controversy in the General Land Office on the 5th day of September, 1897, which the uncontroverted evidence shows was on Sunday, and the application is therefore void. You will therefore find in favor of the defendant."

We can not agree with appellant's counsel that the only evidence in the record on that issue shows that Porter's application was filed September 5, 1897, which was Sunday. If we could we would have no difficulty in affirming the judgment, but the chief clerk testified that "it could not have been received in the General Land Office of Texas on Sunday, for the Land Office was closed on that day, and is always closed on Sunday," and this is some evidence tending to dispute the Commissioner's indorsement, and hence requiring the issue as to when it was received in the General Land Office to be submitted to the jury under a proper charge.

The case was tried upon an erroneous theory, and the judgment is reversed and the cause remanded for a new trial in accordance with this opinion.

*Reversed and remanded.*